IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Christina Carraha,

    Plaintiff,

vs.

Weston Med Spa & Cosmetic Surgery, LLC,

    Defendant.
_____/

Case No. 6:22-cv-01755-WWB-EJK

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE
DEFNITE STATEMENT PURSUANT TO RULE 12(e)**

**I.    INTRODUCTION**

Americans receive billions of telemarketing calls a year, which are deemed nuisances, such that congress banned them in the Telephone Consumer Protection Act ("TCPA"). *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021). However, "as every American knows, there are companies—like the Defendants in this case—who refuse to get that message while collectively sending millions of others." *Id.* The Ninth Circuit recently summarized the frustrations of telemarketing that are at the heart of this case:

1

> Being deluged with "spam" telemarketing phone calls or text messages is the bane of modern life. In a world where countless companies try to capture our attention, it can be exasperating to receive yet another ping on a smartphone.

*Borden v. eFinancial*, 2022 WL 16955661 at 1 (9th Cir. November 16, 2022).

Among other things, the TCPA prohibits telemarketing calls and texts to numbers registered on the national Do Not Call Registry (DNCR) and requires telemarketers to maintain an internal Do Not Call List of the numbers of those that have asked not to be called. The Florida Telephone Solicitation Act (FTSA) also prohibits calls to those on the DNCR or those that have directly asked not to be called, as well as prohibiting automated calls and texts without consent.

Plaintiff Christina Carrara ("Christina") is among the many Americans who have sought to register their telephone number on the DNCR to stop unsolicited telemarketing calls and texts. Plaintiff has been registered on the DNCR for nearly ten years. (Doc. 1, ¶ 14.) However, as has happened to many Americans, simply registering has not been sufficient to stop telemarketers from contacting her. Christina still receives unwanted telemarketing calls and texts because those engaging in telemarketing do not take the simple step of reviewing the DNCR to avoid calling those that have explicitly stated that they do not wish to be called or texted. Rather, many simply blast out messages using automated equipment with total disregard for the recipients' rights under the TCPA and FTSA. Some, such as Defendant here, take advantage of people providing contact information for a

limited purpose and use the telephone number for marketing purposes not intended by a person who provides the phone number.

Defendant Weston Medical Spa used an automated system to blast out telemarketing text messages on a regular basis to Christina and did not timely stop doing so when she sent Stop requests. Christina now seeks to enforce her rights under the TCPA and FTSA for herself and for others similarly situated.

**II.  SUMMARY OF FACTS**

Christina began receiving telemarketing text messages from Weston Med Spa & Cosmetic Surgery, LLC ("Weston") several years ago after one visit to a doctor who is believed to also own Weston, Defendant herein. Christina did not enter into any relationship with Weston, nor request telemarketing from Weston, the doctor or the doctor's medical practice. She did not consent to any communication beyond that which was required to coordinate appointments or necessary for medical care. The text messages to Christina continued for many years, causing annoyance and frustration to Christina, as well as an intrusion upon Christina's seclusion. (Doc. 1, ¶ 23.) Eventually, Christina tried to opt out by replying "Stop" to the number that was texting her, but the messages did not timely cease. (Doc. 1, ¶ 20.)

## III. ARGUMENT

### A. The TCPA and the FTSA Protect People from Unwanted Telemarketing By Maintaining Do Not Call Registries

Pursuant to both Federal and Florida law, people who do not wish to receive telemarketing are allowed to register their cellular telephone numbers in a centralized place, alerting all would-be-marketers of those telephone numbers of people who do not wish to be contacted. 47 C.F.R. § 64.1200(c); Florida Statutes § 501.059(3)(a). Christina did that. The Complaint specifies the date on which she registered for the DNCR, which was nearly ten years ago, on December 6, 2012. (Doc. 1, ¶ 14.) Had Defendant simply consulted the DNCR, it would have seen that Christina did not wish to receive telemarketing. Doing so is not an option; it is required by law.

Marketers must honor the registrations on the Do Not Call Registry. 47 C.F.R. § 64.1200(c); Florida Statutes § 501.059(4). With regard to Christina, and likely others, Defendant did not honor her DNCR status. (Doc. 1 ¶¶ 15, 45 & 60.) Examples of the messages Defendant sent to Christina, which are clearly telemarketing, are set forth in the Complaint. (Doc. 1, ¶ 16.)

The First Cause of Action seeks recovery under the Do Not Call rules of the TCPA. (Doc. 1, ¶¶ 44-48.) The Fourth Cause of Action sets forth the claim for violating the Do Not Call provisions of the FTSA. (Doc. 1, ¶¶ 59-63.) Each of these Causes of Action are set forth in separate sections with headings that make

them easily identifiable. Christina also seeks to be certified as a class representative for persons that were similarly harmed by the sending of telemarketing text messages while on the DNCR. (Doc. 1, ¶ 32.)

The proposed class definitions for each of the classes are set forth in paragraph 32 of the Complaint and are also easily identified by labels that match up to the labels referenced for the classes in each respective causes of action. For example, the class definition titled "Do Not Call Class," referencing a broad set of people that are potential class members, is defined in paragraph 32; and the same wording is used in the heading of the First Cause of Action which is based on the Federal TCPA statute. The class definition "Florida Do Not Call Class" is defined more narrowly to only encompass Florida residents and is referenced in the heading of the Third Cause of Action which is based on the state FTSA statute. The specific provision of the FTSA applicable to that statute is referenced in the heading as well.

The facts summarized here demonstrate that Plaintiff's Complaint provides sufficient notice to Defendant of the claims for violating the TCPA and FTSA for sending telemarketing to a number registered on the DNCR.

### B.   The TCPA and the FTSA Require Marketers to Honor Opt-Out Requests

Pursuant to both Federal and Florida law, even people that have not registered on the DNCR are allowed to discontinue receiving telemarketing

messages, whether they have previously consented or not. Under the TCPA, marketers must have procedures in place for ensuring that do not call requests are honored. 47 C.F.R. §§64.1200(d). In such situations, the recipient of the text message does not have to be on a do not call list in order to assert a violation. *Robison v. 7PN, LLC*, 2021 WL 5051555 (D. Utah 2021). The burden is on the caller to implement the procedures **before** making the call, not on the recipient to figure out how to opt out. 47 C.F.R. §§64.1200(d). This regulation uses the phrase "has initiated" in the past tense, meaning that the procedures must have been implemented before the call or text is made.

Pursuant to the FTSA, no one is supposed to make solicitation calls or texts to persons that have previously communicated to them that they do not want to receive an outbound telephone call, text message or voicemail transmission. Florida Statutes § 501.059(5).

In the present case, Defendant did not honor Christina's requests to stop the messages. The Complaint specifically states that Christina received messages after making multiple stop requests. (Doc. 1, ¶¶ 20, 50, & 65.) Accordingly, Christina has identified two causes of action based on this failure to honor her requests. One cause of action is based on the TCPA. (Doc. 1, ¶¶ 49-53.) The other is based on the FTSA. (Doc. 1, ¶¶ 64-68.) Each of these are set forth in separate sections with headings that make them easily identifiable. Christina also seeks to be certified as a

class representative for persons that were similarly harmed by failures to honor their opt-out requests. (Doc. 1, ¶ 32.) The classes associated with each cause of action are stated in headings that match the class definitions in paragraph 32. These factual allegations clearly put Defendant on notice of the TCPA and FTSA claims being asserted for Defendant's failure to honor opt out requests.

### C. The FTSA Prohibits Telemarketing Through Automated Calls and Texts Without Explicit Consent

Under Florida law, automated telephonic marketing is prohibited without "express written consent" of the recipient. Florida Statutes § 501.059(8)(a). Among other things, express written consent requires:

> [a] clear and conspicuous disclosure informing the called party that:
>
> a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and
>
> b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Florida Statutes § 501.059(1)(g)(4).

This means that, in Florida, there are very clear requirements that must be met before telemarketers can use an automated system for telemarketing.[1] The Complaint clearly alleges that Christina did not provide consent to Defendant for any marketing, let alone in a manner sufficient to allow for automated calls or texts. (Doc. 1, ¶ 19.) The Complaint further quotes several of the messages that were sent and provides a detailed rendition of facts showing how those messages were sent using an automated system. (Doc. 1, ¶¶ 16 & 21.) For example, among other facts suggesting an automated system, the Complaint describes how the text messages were often sent at regular intervals, such as the first day of the month. (Doc.1, ¶ 21(v).) The Complaint also identifies the mechanical "opt out" instructions included in the text messages were indicative of automation being used to send the messages. (Doc.1, ¶ 21(vi).)

Christina has brought a cause of action for violation of the FTSA's prohibition of automated marketing without consent. (Doc. 1, ¶¶ 54-58.) She also seeks to certify a class of other Florida residents that have been sent automated marketing texts from Defendant without consent. (Doc. 1, ¶ 32.) These allegations clearly put Defendant on notice of the claim being asserted for violation of Florida Statutes § 501.059(8)(a). As discussed above about the other causes of action, this

---

[1] The FTSA applies to "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." Florida Statutes § 501.059(1)(e).

cause of action also includes headers that have a statutory reference and mention the "Florida Automated Texts Class" using the same terminology set forth in the proposed class definition paragraph. This clearly notifies Defendant of the claim and the class of persons on whose behalf the claim is made.

### D. The Complaint Adequately Gives Notice of Plaintiff's Claims

The federal courts follow a liberal pleading standard in which the complaint must provide a defendant fair notice of what the plaintiff's claim is and the basis for it. See *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development, Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). Motions to dismiss are rarely granted and only when there is no doubt that a plaintiff cannot prove any set of facts entitling the plaintiff to relief. *Id.* The purpose of Rule 8's requirement of a short and plain statement is to provide notice to the other party and not to summarize every fact. *Clausen and Sons, Inc. v. Theo Hamm Brewing Co.*, 395 F.2d 388 (8th Cir. 1968); see also *U.S. v. Expert Car Care, Inc.*, 2008 WL 4500220 at 1 (M.D. Fla. 2008), quoting *Hill v. State of Fla. Dept. of Health and Rehabilitative Servs.*, 715 F.Supp. 346, 349 (M.D.Fla.1989) ("Unlike the Florida Rules of Civil Procedure, the Federal Rules do not require 'ultimate' or 'material' facts at the pleading stage; all that is required is a 'short and plain statement of the claim showing that the pleader is entitled to relief.'").

Plaintiff's Complaint clearly puts Defendant on notice of the claims against it. Plaintiff goes further and provides the material facts supporting each cause of action. Plaintiff identifies that she is on the DNCR and cites the date that she registered. (Doc 1, ¶ 14.) The Complaint states that Plaintiff did not consent to the text messages, that she received multiple messages, including about one per month for four years, and provides full quotes of several of the messages. (Doc. 1, ¶¶ 15-18.) In TCPA cases, especially class actions, "notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message." See *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1172 (N.D. Ca. 2010). The Complaint states that Plaintiff made multiple "stop" requests and still received some messages after doing so. (Doc 1, ¶ 20.) The Complaint spells out facts that demonstrate the use of an automated system, some of which are also apparent in the quoted messages, such as the mechanical opt out instructions shown by the phrase "Reply STOP to opt out." (Doc 1, ¶ 21.) There are no other material facts that need to be discussed. Any other facts can be sought in discovery.

Dismissal under Rule 8 is generally reserved for cases in which the complaint is so difficult that "its true substance, if any, is well disguised." *Warner Brothers Entertainment, Inc. v. Ideal World Direct*, 516 F.Supp.2d 261 (S.D.N.Y 2007), citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988). To merit

dismissal, a complaint must be so long and confusing that it overwhelms a defendant's ability to understand or mount a defense. *Id.*, citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2nd Cir. 2004). A 368-page, 1,249-paragraph complaint was found not to meet this standard and would not be dismissed under Rule 8. *Id.*, citing *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 311 (S.D.N.Y. 2005). The present Complaint is significantly shorter at just 21 pages.

    Defendant takes issue with Plaintiff's references to law in the Complaint. However, such references simply provide context to the factual allegations discussed throughout this memorandum. See *United States ex. rel. Wallace v. Exactech, Inc.*, 2020 WL 4500493 (August 5, 2020) (noting that conclusions of law provide a framework when supported by factual allegations.). A party is not prohibited from placing statements of law in a complaint, but the complaint should contain sufficient facts that, accepted as true, would state a claim that is plausible on its face. *Henry v. Florida*, 726 Fed.Appx. 764 (11th Cir. 2018). Plaintiff's Complaint contains all the key factual assertions, which Plaintiff has summarized in this memorandum. The Complaint has added legal references to provide context. If the Court accepts the allegations summarized above as true, Plaintiff has established plausible claims for violations of the DNC provisions of the TCPA and FTSA, plausible claims for failing to honor opt-out requests and plausible claims

for using an automated system for telemarketing without valid consent of the called parties.

  **E.** **The Complaint is Sufficiently Clear to Allow Defendant to Answer**

  Motions for more definite statement are disfavored and are not appropriate unless a party in good faith **cannot** respond due to vagueness or ambiguity. *Campbell v. Miller*, 836 F.Supp. 827 (M.D. Fla. 1993) (emphasis added). Simply lacking details is not enough; a more definite statement is not usually ordered unless a pleading is unintelligible. *Burneti v. Westchester Fire Insurance Co.*, 2018 WL 7253073, at 2 (M.D. Fla. May 24, 2018). Parties seeking more details about a claim or defense should do so in discovery. *Id.*

  Plaintiff's Complaint clearly identifies each of the five causes of action asserted by Christina, giving each a separate heading, a reference to an applicable statute and a reference to the class of persons for whom Christina seeks to represent relative to that claim. (Doc. 1, ¶¶ 44-68.) Those classes refer back to the labels for each of the five clearly defined proposed classes set forth earlier in the Class Action Allegations section discussing the appropriateness of this case for class representation. (Doc. 1, ¶ 32.) The Facts section of the Complaint provides the key facts of Christina's claims. To summarize: Christina registered her number on the DNCR so that she would not receive unwanted telemarketing calls; she began receiving regular marketing texts from Defendant. She attempted to directly

request that Defendant cease the messages by replying "stop" on several occasions, but still received additional marketing messages after doing so. The fact section further provides details of some of the messages and identifies facts demonstrating that the messages were sent using an automated system, to which Christina did not provide consent. None of this information is vague, ambiguous or unintelligible. Defendant can easily respond to these allegations.

     Defendant states that Plaintiff's Complaint "incorporates every allegation by reference into each subsequent claim for relief" and therefore "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." But that is not true. There are only 30 paragraphs that are incorporated. And to avoid any confusion, each cause of action clearly and succinctly states what facts give rise to the cause of action at issue. For example, in the first cause of action, the Complaint states, "Defendant's telephone solicitations to the residential cellular telephones of Christina, and members of the Do Not Call Class, while on the National Do Not Call Registry constitute a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2)." (Doc 1, ¶ 45.) Similar language is included in each cause of action that clearly states what facts give rise to the action. Thus, contrary to Defendant's contention, the state and federal claims and legal theories are very easily discernable.

## IV. CONCLUSION

Plaintiff has received unwanted spam text messages in violation of several provisions of both federal and Florida law. She has filed a Complaint on behalf of herself and similarly situated individuals for these violations. The facts supporting her claims are provided in the Complaint, which breaks down five separate causes of action in separate sections complete with headings to help differentiate them. This complies with the Federal Rules of Civil Procedure by providing a plain statement that puts Defendant on notice of the claims. The Complaint is clear enough to allow Defendant's attorney to respond in the manner required by the Federal Rules of Civil Procedure. Accordingly, Defendant's motion must be denied, and Defendant should be required to file an answer.

Dated: November 30, 2022

/s/ *John Kauffman*
John Kauffman
Fl. Bar # 538205
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
Telephone: (385) 285-1090
ext.30056
john.kauffman@lawhq.com

*Attorney for Plaintiff*